UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAKIM EL BEY,

                Plaintiff,

-against-

VICTOR G. DOGDIG, acting as President and CEO, et al.,

                Defendants.

1:22-CV-0091 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

    Plaintiff Jakim El Bey describes himself as an "Aboriginal Indigenous Moorish-American." (ECF 1, at 13.) He resides in Canada, and filed this *pro se* action asserting claims under American criminal and constitutional law against the defendants, who are all located in Canada. His claims arise from events that, he alleges, occurred in Canada. He seeks damages, the criminal prosecution of the defendants under American criminal law, and the enforcement of decisions or rulings made against some of the defendants in the "Moorish Consular Court." (*Id.* at 21.)

    Plaintiff has paid the fees to bring this action, and the Clerk of Court has issued summonses. For the reasons discussed below, the Court dismisses this action.

## STANDARD OF REVIEW

    The Court has the authority to dismiss a complaint, even when the plaintiff has paid the fees to bring a federal civil action, if the Court determines that the action is frivolous, *Fitzgerald v. First E. Seventh Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or that the Court lacks subject matter jurisdiction, Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The Court also may dismiss an action for failure to state a claim, "so long as the plaintiff is given notice and an opportunity to be heard." *Wachtler v. Cnty. of Herkimer*, 35 F.3d

77, 82 (2d Cir. 1994) (citation and internal quotation marks omitted). The Court is obliged, however, to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original).

## BACKGROUND

While Plaintiff's pleadings[1] are not a model of clarity, the Court understands them to assert claims arising from a dispute in which a Canadian bank asserted that Plaintiff owed that bank a debt (perhaps, a mortgage debt) regarding Plaintiff's residential property located in Oshawa, Ontario, Canada. The named defendants are all located in Canada; they include bank officers, debt collectors, attorneys, correction officials, a correctional facility, property managers, a judge, law-enforcement officers, court clerks, real estate agents, and others.

Plaintiff alleges the following: In January 2020, Plaintiff sought documentation from the bank to verify the disputed debt, and then filed a lawsuit against the bank.[2] In March 2020, he received documents from the bank concerning the debt, but they were fraudulent. Representatives of some of the defendants began to harass Plaintiff in or about July 2020, asking him how many people lived on his residential property, the names of the people who lived there, and whether Plaintiff was a tenant. Legal proceedings concerning the continued ownership of Plaintiff's residential property then began in an Ontario court. On February 22, 2021, a notice of

---

[1] Plaintiff describes his initial pleading as an "Affidavit of Fact – Writ of Tort Claim." (ECF 1.) He has since filed four more "Affidavits of Fact" in this action, which include additional allegations. (ECF 3-6.) The Court construes Plaintiff's initial "Affidavit of Fact" as his complaint, and his additional "Affidavits of Fact" as supplements to his complaint.

[2] Plaintiff alleges that he "still ha[s]n't heard anything regarding the lawsuit." (ECF 1, at 14.)

2

eviction issued by an Ontario court was placed on Plaintiff's door. It stated that Plaintiff had to vacate his home before March 25, 2021. Plaintiff tried to challenge the eviction, but the Ontario court would not accept his documents. Approximately one week later, another notice of eviction was placed on his door. Plaintiff tried again to challenge the eviction, but again, the Ontario court would not accept his documents.

Plaintiff also alleges the following: On March 25, 2021, seven men came to Plaintiff's door, including a locksmith and "policy enforcers acting as Police." (ECF 1, at 15.) Plaintiff, members of his family, and a friend who was visiting were all forced out of Plaintiff's home after being given a few minutes to collect personal belongings. After Plaintiff had been forced from his home, he became aware that a notice had been posted on his home that "read vacant possession." (*Id.*) After speaking to the Ontario Human Rights Commission, and being told by that organization that he had been illegally removed from his home, Plaintiff, with that organization's assent, returned to his home. On April 1, 2021, a group of 15 to 20 armed men "acting as [the] Durham Police Task Force" came to Plaintiff's home. Plaintiff told them that they had no right to be on his property. Plaintiff was arrested "and charge[d] with alleged crimes for going back into [his] own home." (*Id.*) He was released the next day.

Plaintiff further alleges the following: By July 2021, Plaintiff had changed the locks to his home. On July 3, 2021, however, Plaintiff noticed that someone else had changed the locks to his home again. Plaintiff attempted to file a police report, but the police failed to investigate his accusations. Plaintiff then attempted to file another police report, but he was made to wait to file it. After Plaintiff attempted to find out what was taking so long to file his report, a police officer spoke to him, asking him if his name was Garry Browne. Plaintiff told the officer his name. The

police eventually arrested Plaintiff; criminal charges were brought against him in an Ontario court, and starting on or about September 24, 2021, a criminal trial began.[3]

## DISCUSSION

### A.    Private prosecution

To the extent that Plaintiff seeks the criminal prosecution of any of the defendants under American criminal law, the Court must dismiss those claims. Plaintiff cannot initiate the arrest and prosecution of an individual or other entity in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Plaintiff also cannot direct prosecutors to initiate a criminal proceeding against any defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which he seeks the criminal prosecution of any of the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim.") (internal quotation marks and citation omitted).

### B.    Remaining claims

The Court must dismiss Plaintiff's remaining claims because this court is not a proper venue for those claims. Under the general venue provision for federal civil actions, an action may be brought in:

---

[3] Plaintiff does not disclose the current status of the criminal case.

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Under 28 U.S.C. § 1391(c), a "natural person" resides in the federal judicial district where the person is domiciled, and any other "entity with the capacity to sue and be sued," if a defendant, resides in any federal judicial district where it is subject to personal jurisdiction with respect to the civil action in question. *See* § 1391(c)(1), (2).

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." For the purpose of Section 1406(a), "a district cannot be wrong if it is one in which the case could have been brought under § 1391. . . . [A] wrong district is therefore a district other than those districts in which Congress has provided *by its venue statutes* that the action may be brought." *Atl. Marine Constr. Co., Inc. v. United States Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 58 (2013) (internal quotation marks and citation omitted, emphasis in original).

Plaintiff, who resides in Canada, asserts claims against the defendants, all of whom are located in Canada, arising from a dispute involving real estate property located in Canada, as well as from Plaintiff's arrest and subsequent prosecution in Canada. He does not allege any facts that suggest that: (1) any defendant resides in this federal judicial district; (2) a substantial part of the events or omissions giving rise to his claims occurred, or a substantial part of the property at issue is located, in this federal judicial district; or that (3) any defendant is subject to this court's personal jurisdiction with respect to this action. Thus, under Section 1391(b)(1), (2), or (3), this court is not a proper venue for any of Plaintiff's remaining claims.

Because there is no indication that there is any federal judicial district in which this case could properly have been brought, it is not in the interest of justice to transfer Plaintiff's remaining claims to another United States District Court. The Court therefore dismisses Plaintiff's remaining claims because they have been brought in the wrong venue. *See* § 1406(a); *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1994) ("Whether dismissal or transfer [under Section 1406(a)] is appropriate lies within the sound discretion of the district court.").

## CONCLUSION

The Court dismisses this action. The Court dismisses Plaintiff's claims in which he seeks the criminal prosecution of any of the defendants under American criminal law for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court dismisses Plaintiff's remaining claims as brought in the wrong venue. *See* 28 U.S.C. § 1406(a).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated:   March 15, 2022
         New York, New York

                                              /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              Chief United States District Judge